UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | NO. 2:12-CR-61 |
| | ) | NO. 2:14-CV-145 |
| STEVEN THOMAS KOTSONIS, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court pursuant to 28 U.S.C. § 636 and by Order of Reference from the District Court referring the matter for an evidentiary hearing [Doc. 92]. The matter has been fully briefed, and an evidentiary hearing was held on December 2, 2016.

## I.    INTRODUCTION

Defendant Steven Thomas Kotsonis ("Kotsonis") filed a Motion to Vacate, Set Aside or Correct his Sentence pursuant to 28 U.S.C. § 2255, [Doc. 58, 59], raising a number different issues pertaining to whether he received ineffective assistance of counsel. One of those claims pertains to whether trial counsel failed to "timely file a notice of appeal despite [Kotsonis's] explicit instruction to do so." [Doc. 92, pg. 1]. The District Court, after reviewing the petition, "determined that an evidentiary hearing as to this claim only [was] necessary…" and referred the matter to the undersigned to conduct "the necessary evidentiary hearing" on that claim alone. *Id.*

## II.    PROCEDURAL AND FACTUAL BACKGROUND

The Grand Jury returned a three count indictment charging Kotsonis with obstructing, delaying, and affecting commerce by robbery in violation of the Hobbs Act; using, carrying, and brandishing a firearm during a crime of violence; and being a felon in possession of a weapon. [Doc. 1]. Kotsonis entered a plea agreement in which he stipulated to the following facts:

1

a)   On April 12, 2011, in the Eastern District of Tennessee, Steven Thomas Kotsonis entered the Video Plaza store located at 2510 South Roan Street, Johnson City, Tennessee. Kotsonis was wearing a black hooded jacket, blue jeans and a dark colored bandana over his face. Kotsonis was carrying a handgun.

b) Once inside, Kotsonis demanded money from the store clerk, Noah Naseri. Naseri complied, giving Kotsonis the nightly deposit and money from the store safe. Kotsonis also took Naseri's wallet and watch. Kotsonis then fled the scene. A total of $777.93 was estimated to have been stolen.

…

e)   Kotsonis and [co-defendant] Benenati were … questioned by investigators with the Johnson City Police Department. Both individuals were advised of their Miranda rights and made written waivers thereof. Kotsonis went on to give a written confession, while Benenati gave a verbal confession. Jackson [Kotsonis's girlfriend] also provided a written statement against both Kotsonis and Benenati. Subsequently, Kotsonis and Jackson gave consent to a search of their residence at 485 Chuckey Ruritan Road South. The search uncovered a Bersa, model Thunder, .380 caliber, semi-automatic pistol and a Colt, model Detective Special, .38 caliber revolver, along with ammunition for each weapon. Another bandana matching those worn during the robbery was also found. The watch taken from Nasiri was recovered as well.

[Doc. 35, ¶ 4].  He also agreed to waive, with limited exceptions, any right to file a direct appeal or

to collaterally attack his conviction as follows:

9.      (a) In consideration of the concessions made by the United States in this agreement and as a further demonstration of the defendant's acceptance of responsibility for the offense(s) committed, the defendant agrees not to file a direct appeal of the defendant's conviction(s) or sentence, except the defendant retains the right to appeal a sentence imposed above the sentencing guideline range determined by the district court or above any mandatory minimum sentence deemed applicable by the district court, whichever is greater.

(b)   In addition, the defendant knowingly and voluntarily waives the right to file any motions or pleadings pursuant to 28 U.S.C. § 2255 or to collaterally attack the defendant's conviction(s) and/or resulting sentence. The parties agree that the defendant retains the right to raise, by way of collateral review under § 2255, claims of ineffective assistance of counsel or prosecutorial misconduct not known to the defendant by the time of the entry of judgment.

[Doc. 35, ¶ 9].

On November 13, 2012, he entered his plea before the District Court [Doc. 36, *Minute Entry*]. At that hearing, the following colloquy occurred:

> Q. Now, as I said earlier, there's been a plea agreement filed in this case. Have you read this plea agreement or had it read to you?
>
> A. Yes, Your Honor.
>
> Q. And has your attorney explained to you all the terms of and conditions of this plea agreement you've entered into with the Government?
>
> A. Yes, sir.
>
> Q. Do you fully understand all the terms and conditions of the plea agreement you've entered into with the United States?
>
> A. Yes, sir.
>
> …
>
> Q. … Did you read the stipulation of facts contained in paragraph 3 of this plea agreement carefully?
>
> A. Yes, sir.
>
> Q. And did you review this stipulation of facts with your attorney?
>
> A. Yes, sir.
>
> Q. And do you agree with the summary of what you did in this case that's set out in paragraph 3 of this plea agreement?
>
> A. Yes, sir.
>
> Q. Are all of the facts set out in paragraph 3 of this plea agreement true?
>
> A. Yes, Your Honor.
>
> Q. Do you stipulate here today under oath that the facts contained in paragraph 3 of this plea agreement are true and correct?
>
> A. Yes, sir.
>
> …
>
> Q. … I think some further factual development is necessary to provide a factual basis for actual brandishment of the firearm as opposed to

carry it. What else did you do with the firearm, did you display it to the clerk?

A.      I had it in my hand, Your Honor.

Q.      And did you wave it about?

A.      Yes, sir.

Q.      Did you point it at the clerk?

A.      Yes, Your Honor.

[Doc. 76, *Transcript of Plea Hearing,* pg. 12-17].

The District Court also reviewed with Kotsonis his appellate waiver and right to collaterally attack his conviction. The following colloquy occurred regarding those issues:

Q.      Mr. Kotsonis, do you understand that under your plea agreement with the government you have expressly waived rights to appeal or to collaterally attack your convictions and/or resulting sentence in this case … as set out in paragraph 9 of your plea agreement?

A.      Yes, sir.

Q.      Did you read paragraph 9 of the plea agreement carefully?

A.      Yes, I have, sir.

Q.      And did you review the provisions of paragraph 9 of this plea agreement with your attorney?

A.      Yes, sir.

Q.      Have you and your attorney fully discussed these waivers of your rights to appeal and your right to collaterally attack your convictions or the resulting sentence in this case?

A.      Yes, he has.

[Doc. 76, pg. 21-22].

The Presentence Report calculated his total offense level to be 18, his criminal history category as V, and his advisory guideline range as to the Hobbs Act robbery and possession of a

4

firearm by a convicted felon to be 51 to 63 months, and for using, carrying, and brandishing a firearm during a crime of violence to be a mandatory minimum of 84 months consecutive to the other offenses, resulting in a combined advisory guideline range of 135 to 147 months imprisonment. [Doc. 84, *Transcript of Sentencing Hearing,* pg. 3]. On May 6, 2013, the District Court sentenced Defendant to an effective sentence of 140 months[1] [Doc. 53, *Judgment*; Doc. 84, pg. 26]. No appeal was filed.

On May 12, 2014, Kotsonis filed this Motion to vacate under 28 U.S.C. § 2255, [Doc. 58], and subsequently amended it on June 2, 2014 [Doc. 59]. The United States filed a response and attached the affidavit of Kotsonis's trial counsel [Doc. 65, 65-1].

## III.   FINDINGS OF FACT

Kotsonis was charged in a three count indictment with a Hobbs Act robbery, carrying and brandishing a firearm in relation to a crime of violence and with being a convicted felon in possession of a firearm. He entered into a plea agreement in which he agreed to plead to all three counts of the indictment. [Doc. 35, *Plea Agreement*]. His trial counsel reviewed all the provisions of the plea agreement with him, answering any questions he might have had about its terms and conditions. In consideration of the other terms of the agreement, Kotsonis agreed to waive filing a direct appeal of his sentence, provided it did not exceed the advisory sentencing guideline range as determined by the District Court or the statutory maximum, whichever was greater [Doc. 35, pg. 7]. He advised his trial counsel that he understood the appellate waiver provision. Trial counsel believed Kotsonis understood the waiver and its implications for any appeal.

Kotsonis appeared before the Honorable J. Ronnie Greer, United States District Judge, on

---

[1] The District Court sentenced Kotsonis 56 months on the Hobbs Act robbery and possession of a firearm by a convicted felon followed by 84 months, the statutory minimum, for using, carrying and brandishing a firearm during a crime of violence [Doc. 53, Judgment; Doc. 84, pg. 26].

November 12, 2012 and entered his plea of guilty to the charges in the indictment. Under oath, he advised the District Court that he and his trial counsel had reviewed the plea agreement and specifically the appeal waiver and that he fully understood its terms and effect on his right to file an appeal. At sentencing, the District Court specifically advised Kotsonis of his right to appeal pursuant to Fed. R. Crim. P. 32(j) and the time frame in which that right must be exercised [Doc. 84, *Transcript of Sentencing,* pg. 30]. He did not file an appeal nor did he advise the Clerk's Office to file one on his behalf. His counsel also did not file an appeal.

At the evidentiary hearing on his 2255 motion, Kotsonis testified that he specifically instructed his counsel to appeal the case on two separate occasions – both on the same day. The first was the morning of sentencing on May 6, 2013, where he said he met with his counsel prior to sentencing. At that time, he said he told counsel he wanted to appeal. He testified that his counsel advised him against that, but that he refused to accept that advice, and instead, specifically instructed him to file the appeal anyway. The second time, Kotsonis claims, was immediately after sentencing when he was being escorted out of the courtroom. At that point, he said he looked over to his counsel and told him to take care of the appeal.

His trial counsel disputes that testimony. Counsel testified that he reviewed the appeal waiver with Kotsonis when he signed the plea agreement and when he reviewed the PSR with Kotsonis prior to sentencing. They discussed his right to appeal and identified no issues on which an appeal could be pursued. Although his counsel does not recall whether he met with Kotsonis on the morning of sentencing, his recollection about whether Kotsonis instructed him to appeal was clear. At no time within the time period in which an appeal could be filed did Kotsonis instruct him to file an appeal, disputing Kotsonis's account. Counsel also testified that Kotsonis never wrote to him instructing him to file an appeal. Had Kotsonis instructed him to appeal, he would have filed a notice of appeal.

6

Sentencing occurred on May 6, 2013, and the judgment in this case was entered on May 20, 2013 [Doc. 53]. The time to file an appeal would have expired on June 3, 2013. On May 22, 2013, counsel met in person with Kotsonis at the Claiborne County jail. Between his sentencing and this meeting, Kotsonis called counsel's office numerous times and spoke with his staff about what was taking so long for him to get transferred out of Claiborne County jail. At the May 22nd meeting, they discussed his being at that jail and how he wanted to be transferred out of that jail to the custody of the BOP. Counsel agreed he would do what he could to expedite his transfer. Kotsonis did not express any interest in appealing in either the phone calls he made to counsel's office or to counsel at the May 22nd meeting.

On May 23, 2013, counsel sent Kotsonis a "closing letter" [Exhibit 2]. In that letter, counsel wrote the following:

> I have reviewed the Judgment, and it appears to be correct. I must also inform you of your legal right to appeal the sentence imposed in this case. You have fourteen days (June 3, 2013) from the entry of the Judgment to file a notice of appeal. Though you have a legal right to file a notice of appeal, I must also tell you that I do not feel that you have any legal issues to raise on appeal. Unless you contact the office, I will not be filing a notice of appeal.

[Exhibit 2].

On May 31, 2013, Kotsonis wrote his counsel, acknowledging receipt of the judgment, but taking issue with the amount of restitution the Court ordered [Exhibit 1]. The obvious gist of his letter was to expresses great displeasure at still being housed at Claiborne County, indicating that he was "ready to get out of this hole" [Exhibit 1]. The only mention of an appeal was on the margin of the letter where he wrote the following: "P.S. I am interesting [sic] in what this appeal you speak of can do for me so please get a hold of me…"

The only time Kotsonis makes any reference to an appeal in writing during the time frame in which an appeal could be filed is this May 31st letter. Counsel received that letter on June 3,

2013 at 2:34 p.m.,[2] hours before the time to file an appeal expired.  It is not clear from the record

when counsel actually saw Kotsonis's correspondence, but in any event, he did not interpret it as

an instruction to file an appeal and took no steps to contact Kotsonis about what he meant in the

letter.

Months later, on October 15, 2013, Kotsonis wrote counsel claiming that he had

specifically instructed counsel to appeal in a letter he said he sent in the second week of May 2013.

He wrote that, after looking at the docket sheet, "I don't see the motion for direct appeal that I told

you file [sic] in court and in the letter I sent you from Tennessee (New Tazewell) back in the 2nd

week of May…"  [Exhibit 3, pg. 2].   At the evidentiary hearing, counsel testified that he did not

receive any letter directing him to appeal.  He only received the letter of May 31st.  In response,

on December 4, 2013, counsel wrote Kotsonis:

> As far as a notice of appeal is concerned, I discussed this matter with you prior to
> sentencing and we concluded that you had no grounds for an appeal and that an
> appeal was not in your best interests.  In fact, we discussed that you would face
> potentially much higher sentences in the state and federal courts if for some reason
> you no longer had the plea deal that he negotiated for you.  We talked several times
> with you after sentencing, both in person and over the telephone, and you never
> requested an appeal at any time during the time for filing an appeal or even during
> the time period after the appeal deadline.  Your only concern after you were
> sentenced was getting moved from the Claiborne County jail to the federal Bureau
> of Prisons.

[Exhibit 4].

The Court finds as a matter of fact that Kotsonis's claim that he verbally instructed his

counsel to file an appeal to be incredible.  Although he claimed at the hearing the appeal was very

important to him, he did not act as if it were.   He certainly did not find it important enough to tell

anyone to file an appeal during the time in which one could be filed.  Though he spoke numerous

---

[2] When the Federal Defender Services receives correspondence from defendants, the correspondence is stamped with the date and time it is received.

times with counsel's office, he admitted that he never instructed them or advised them that he wanted to appeal.  At the May 22nd meeting where he met in person with his counsel, he did not express any interest in appealing.    In fact, his May 31st letter expressing an interest in what "an appeal you speak of can do for me" actually undercuts his claim that he adamantly instructed his counsel to appeal on the day he was sentenced.    Accordingly, the Court finds that Kotsonis did not explicitly instruct his counsel to file an appeal.

## IV.    ANALYSIS

"[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *United States v. Doyle*, 631 F.3d 815, 817 (6th Cir. 2011)(quoting *Roe v. Flores–Orte*ga, 528 U.S. 470, 477 (2000)).  To establish a claim of ineffective assistance of counsel, the petitioner must prove that his counsel's performance was deficient and that the deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The *Strickland* analysis applies to claims that the attorney's deficient performance led to the forfeiture of a direct appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000). Prejudice is shown when there is a reasonable probability that, but for counsel's deficient performance, petitioner would have timely appealed. *Id*. at 483-84; see also *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir.1998) (holding failure to file direct appeal when specifically requested establishes prejudice).

As noted, the Court finds that Kotsonis did not instruct his counsel to file an appeal either in writing or verbally.  In those instances, "[a]bsent specific instructions to file an appeal, [the Court] ask[s] first "whether the attorney 'consulted' with the defendant about the benefits and drawbacks of bringing an appeal." *Regalado v. United States*, 334 F.3d 520, 525 (6th Cir. 2003). When consultation has occurred, counsel "performs in a professionally unreasonable manner *only* by failing to follow the defendant's express instructions with respect to the appeal.'"  *Doyle,* 631 F.3d at 818 (quoting *Flores-Ortega*, 528 U.S. at 478)(emphasis in the original).

9

In this case, Kotsonis's counsel consulted with him about an appeal twice: once at the time of signing the plea agreement and again when he reviewed the Presentence Report with Kotsonis. They spoke specifically about the benefits and drawbacks of bringing an appeal and whether pursuing such an appeal was in Kotsonis's best interests. In his December 4, 2013 letter, counsel reminded him that they had "discussed that [he] would face potentially much higher sentences in the state and federal courts if for some reason [he] no longer had the plea deal that [they had] negotiated for [him]." [Exhibit 4]. Moreover, Kotsonis, under oath, before the District Court acknowledged that his counsel had reviewed the appellate waiver with him and that he understood the effect of that waiver on his ability to pursue an appeal. At the conclusion of the sentencing hearing, the District Court also advised him that he could file an appeal and that the clerk would prepare one for him if he wanted. Notwithstanding that, Kotsonis never instructed his counsel or the Clerk's Office to appeal prior to the date in which an appeal had to be filed. He personally spoke with counsel's office numerous times and personally met with his counsel prior to the deadline to file an appeal, but again never instructed an appeal be filed.

In *Doyle,* the Sixth Circuit found counsel's performance not unreasonable where the defendant knew of his right to appeal, his counsel had discussed with him the merits of an appeal, and the defendant had not instructed his counsel to file a notice of appeal. *Doyle,* 631 F.3d at 818. In *Wright v. United States,* 320 Fed.App'x 421 (6th Cir. 2009), the defendant had signed a plea agreement that contained a broad waiver of the right to appeal his conviction and sentence. Despite the waiver, the defendant would be entitled to relief under § 2255 if the district court determined that there was "an actual request for an appeal." *Id.* at 426. The Sixth Circuit remanded the case to determine whether the defendant "expressly requested that his counsel appeal his sentence and that this request was ignored...." *Id.* at 427.

Again in *Campbell v. United States,* 686 F.3d 353 (6th Cir. 2012), the Sixth Circuit held "that even when a defendant waives all or most of his right to appeal, an attorney who fails to file an appeal that a criminal defendant explicitly requests has, as a matter of law, provided ineffective assistance of counsel that entitles the defendant to relief in the form of a delayed appeal." *Id.* at 360.

In this case, the Court finds that Kotsonis did not make an explicit request for his counsel to appeal this matter. The Court finds that his claims that he specifically instructed his counsel to appeal verbally on the day of sentencing to be incredible. That only leaves the letter sent by Kotsonis on May 31, 2013, where he expresses an "interest[] in what this appeal you speak of can do for me so please get a hold of me…." [Exhibit 1]. The remark is not an explicit request for an appeal.

To the extent that counsel had any duty to consult with Kotsonis as a result of the May 31st letter, Kotsonis still has not demonstrated that he would have appealed. Merely showing that he demonstrated an interest in taking an appeal is insufficient to prove that had he received reasonable advice about the appeal, he would have instructed counsel to file an appeal. *Flores-Ortega*, 528 U.S. at 486. To demonstrate prejudice, the defendant must show that but for the deficient conduct of counsel, he would have appealed. *Id*. He has not done so. He has not presented any evidence that had counsel met with him and given him reasonable advice about the appeal he would have filed an appeal. In fact, the evidence was just the opposite. His counsel was quite clear that filing an appeal could jeopardize the plea agreement and result in Kotsonis receiving more jail time that he already had.

## V. RECOMMENDATION

Counsel consulted with Kotsonis about the merits of appealing. Kotsonis was aware of his right to appeal and did not, at any point, explicitly instruct, whether in writing or verbally, his counsel to file a notice of appeal. Even assuming counsel's assistance was ineffective for failing to consult with Kotsonis after receiving his letter on June 3, 2013, Kotsonis has failed to show any prejudice. He has neither claimed that he would have appealed if he had been consulted nor has he identified any issue, meritorious or not, that he would have appealed had he had the opportunity.[3] Accordingly, the Court RECOMMENDS that Kotsonis's § 2255 claim that his counsel was ineffective for failing to file an appeal be DENIED.[4]

Respectfully Submitted,

s/Clifton L. Corker
United States Magistrate Judge

---

[3] The Court notes that Kotsonis is not under any duty to show nonfrivolous grounds to appeal in order to demonstrate prejudice. As the Supreme Court noted in *Flores-Ortega,* "although showing nonfrivolous grounds for appeal may give weight to the contention that the defendant would have appealed, a defendant's inability to 'specify the points he would raise were his right to appeal reinstated,' will not foreclose the possibility that he can satisfy the prejudice requirement where there are other substantial reasons to believe that he would have appealed." *Flores-Ortega*, 528 U.S. at 486.

[4] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1).