UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| STEVEN THOMAS KOTSONIS, | ) | |
|---|---|---|
| Petitioner, | ) | |
| | ) | |
| v. | ) | Nos. 2:12-CR-61 |
| | ) | 2:14-CV-145 |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the motion of Steven Thomas Kotsonis ("Kotsonis" or "petitioner") to vacate, set aside or correct sentence under 28 U.S.C. Section 2255, [Doc. 58],[1] and a second motion to vacate, set aside or correct sentence, which the Court construes as an amendment to the original motion, [Doc. 59]. The United States has responded in opposition, [Doc. 65], and the matter is ripe for disposition. The Court has determined that, except as discussed below, the files and records of the case conclusively establish that the petitioner is not entitled to relief under § 2255 and his motions will be DENIED and the case DISMISSED.

**I. Factual and Procedural Background**

Kotsonis and co-defendant Christopher Michael Benenati ("Benenati") were indicted by a federal grand jury on June 13, 2012, [Doc. 1], on charges arising from the April 12, 2011 armed robbery of the Video Plaza at 2510 South Roan Street, Johnson City, Tennessee. Kotsonis and Benenati were charged with Hobbs Act robbery in Count One (18 U.S.C. § 1951) and with use, carry and brandishment of a firearm during and in relation to a crime of violence in Count Two (18 U.S.C. § 924(c)(1)(A)(ii)). Kotsonis was charged in Count Three with being a felon in

---

[1] All docket numbers refer to the docket sheet in No. 2:12-CR-61.

1

possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

On August 16, 2012, Benenati entered into a negotiated plea agreement with the government, agreeing to plead guilty to Counts One and Two, [Doc. 25], and he entered his pleas on August 31, 2012, [Doc. 28]. Kotsonis subsequently entered into a plea agreement with the government on October 5, 2012, [Doc. 35], also agreeing to plead guilty to Counts One and Two, as well as Count Three, and he entered his guilty pleas on November 13, 2012, [Doc. 36]. Sentencing for Kotsonis was scheduled for May 16, 2013, and a presentence investigation report ("PSR") was ordered. [*Id.*] Kotsonis was sentenced to 56 months of imprisonment concurrent on Counts One and Three and the mandatory minimum 84 months consecutive on Count Two, for a net sentence of 140 months. [Doc. 52]. Judgment was entered on May 20, 2013, [Doc. 53], and Kotsonis did not appeal the Court's judgment. Petitioner then timely filed his § 2255 motion on May 12, 2014,[2] [Doc. 58], and an amended motion on June 2, 2014,[3] [Doc. 59].

Petitioner's plea agreement contained the following stipulation of facts:

> a) On April 12, 2011, in the Eastern District of Tennessee, Steven Thomas Kotsonis entered the Video Plaza store located at 2510 South Roan Street, Johnson City, Tennessee. Kotsonis was wearing a black hooded jacket, blue jeans and a dark colored bandana over his face. Kotsonis was carrying a handgun.
> b) Once inside, Kotsonis demanded money from the store clerk, Noah Naseri. Naseri complied, giving Kotsonis the nightly deposit and money from the store safe. Kotsonis also took Naseri's wallet and watch. Kotsonis then fled the scene. A total of $777.93 was estimated to have been stolen.
> c) The following day, April 13, 2011, Investigator Keith Sexton of the Johnson City Police Department was made aware of a 'check the welfare' call for Alicia Jackson of 485 Chuckey Ruritan Road South. Both Jackson and Kotsonis resided at this address. The welfare call was placed by Leslie Whitehead, Jackson's mother. Whitehead had become concerned after Jackson informed her that Kotsonis had robbed a video store the previous

---

[2] This was a handwritten § 2255 motion.
[3] This motion was filed on one of the form motions typically used by inmates when filing § 2255 motions.

2

night. At that time, Jackson was pregnant with Kotsonis's child.

d) On April 14, 2011, Investigator Sexton located Kotsonis at 485 Chuckey Ruritan Road South. His vehicle was followed from the residence and stopped shortly thereafter. Kotsonis was driving the vehicle, which carried Christopher Mark Benenati, Jackson and her two young children. All parties were taken into custody. An inventory search of the vehicle revealed a black hooded jackets [sic] and a bandana consistent with those worn during the robbery.

e) Kotsonis and Benenati were then questioned by investigators with the Johnson City Police Department. Both individuals were advised of their Miranda rights and made written waivers thereof. Kotsonis went on to give a written confession, while Benenati gave a verbal confession. Jackson also provided a written statement against both Kotsonis and Benenati. Subsequently, Kotsonis and Jackson gave consent to a search of their residence at 485 Chuckey Ruritan Road South. The search uncovered a Bersa, model Thunder, .380 caliber, semi-automatic pistol and a Colt, model Detective Special, .38 caliber revolver, along with ammunition for each weapon. Another bandana matching those worn during the robbery was also found. The watch taken from Nasiri was recovered as well.

f) Billing invoices obtained by Investigator Sexton from the Video Plaza store show inventory transactions originating in New Jersey and Georgia. These documents establish involvement in interstate commerce.

g) Special Agent David Wiley of the Bureau of Alcohol, Tobacco, and Firearms analyzed the firearms recovered from the residence at 485 Chuckey Ruritan Road South. That examination determined that neither firearm was produced in the State of Tennessee, and therefore both affected interstate commerce.

h) On November 24, 2009, Kotsonis was convicted in the Criminal Court of Washington County in the State of Tennessee in case number 34843 of the felony of Aggravated Assault in violation of Tennessee Code § 39-13-102. Kotsonis was thus a prohibited person under federal law.

[Doc. 35 at ¶¶ 3(a) - 3(h)]. Further, Kotsonis admitted, under questioning from the Court at his change of plea hearing, that he displayed the firearm to the clerk, waived it about, and pointed it at the clerk. [Doc. 76, at 17].

## II. Standard of Review

This Court must vacate and set aside petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . . ." 28 U.S.C. § 2255. Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo,* 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson,* 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994). *See also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying Brecht to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F. 2d 1039, 1041 (6th Cir.), cert. denied, 439 U.S. 988 (1978). To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a

complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir.), cert. denied, 517 U.S. 1200 (1996). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

When a § 2255 Petitioner claims he was denied his sixth amendment right to effective assistance of counsel, it is noted that an attorney is presumed to have provided effective assistance, and the Petitioner bears the burden of showing that the attorney did not, *Mason v. Mitchell*, 320 F.3d 604, 616-17 (6th Cir. 2003). Petitioner must prove that specific acts or omissions by his attorney were deficient and that the attorney failed to provide "reasonably effective assistance," *Strickland v. Washington,* 466 U.S. 668, 687 (1987), which is measured by "prevailing professional norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). If Petitioner crosses this evidentiary hurdle, he must then show "a reasonable probability that, but for [the attorney's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. In other words, he must show that he was prejudiced by the attorney's deficient representation:

> To succeed on an ineffective assistance claim, a defendant must show that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). [A court's ] review of counsel's performance is "highly deferential." Id. at 689, 104 S.Ct. 2052. [The court must] "judge the reasonableness of the time of counsel's conduct." *Id*. at 690, 104 S.Ct. 2052. The defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. To establish "prejudice," a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694, 104 S.Ct. 2052. "The likelihood of a different result must be substantial,

5

> not just conceivable." *Harrington v. Richter*, 562 U.S. ——, 131 S.Ct. 770, 792, 178 L.Ed.2d 624 (2011). And, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052.

*Docherty v. United States*, 536 Fed. Appx. 547, 551 (6th. Cir. 2013).

### III.   Analysis

As best the Court can tell, petitioner raises the following claims in his original motion: (1) Ineffective assistance of counsel-failure to file a motion to suppress petitioner's confession; (2) ineffective assistance of counsel-failure to challenge the indictment "on the basis that it was obtained by use of an illegally obtained confession;" (3) ineffective assistance of counsel-failure to move to suppress two firearms recovered from petitioner's home on the basis that his consent was coerced; (4) ineffective assistance of counsel-failure to challenge the indictment on the basis that it was obtained based on the illegally seized firearms; (5)  ineffective assistance of counsel-petitioner was not told by counsel that he could have challenged the confession and firearms and, had he been told, he "would have pressed the legal challenges and proceeded to trial if a dismissal was not obtained;" (6) ineffective assistance of counsel-counsel failed to challenge his seven-year mandatory consecutive sentence on Count Two as being in violation of *Alleyne v. United States*; (7)  ineffective assistance of counsel-counsel did not file a notice of appeal despite petitioner's instruction to do so; (8) prosecutorial misconduct-the prosecutor "knew that the confession evidence and firearms evidence (seized via a tainted consent) were obtained in violation of due process;" and (9) petitioner's "sentence exceeds the maximum allowed by law."  In his June 2 filing, petitioner raises the same issues, plus an additional one, i.e., that counsel was ineffective for failing to move to dismiss the indictment for a violation of the Speedy Trial Act, 18 U.S.C. § 3161, relying on *Zedner v. United States*.  Attached to petitioner's June 2 filing was his 12-page

handwritten declaration. The Court will address each of these claims, though not in the same order raised, and the discussion of several will be grouped under the same heading.

### A. Ineffective Assistance of Counsel-Notice of Appeal

In his declaration, petitioner asserts that he "clearly expressed to [his] attorney that [he] wanted to appeal." [Doc. 59-3 at ¶ 18]. Based on the Court's initial review of petitioner's motion, the Court determined that an evidentiary hearing was necessary on this claim and referred the matter to the Magistrate Judge for the appointment of counsel, to conduct the evidentiary hearing, and to issue a report and recommendation ("R&R"). [Doc. 92]. Counsel was appointed, [Doc. 93], and an evidentiary hearing was conducted on December 2, 2016, [Doc. 99]. On December 8, 2016, the Magistrate Judge filed his R&R recommending that petitioner's § 2255 claim that counsel was ineffective for failing to file a notice of appeal be denied, [Doc. 101]. Petitioner has not objected to the R&R and the time for doing so has now passed; he has thus waived any further appeal as to this claim. After careful review of the entire record, including the Magistrate Judge's thorough R&R, the R&R will be AFFIRMED and ADOPTED as the order of the Court. For the reasons stated by the Magistrate Judge, this claim lacks merit.

### B. Motion to Suppress

Claims 1, 2, 3, 4, 5 and 8 are, in one way or another, based on petitioner's claim that counsel failed to move to suppress evidence of an illegally obtained confession and firearms seized based on coerced consent to search. Failure of counsel to file a meritorious motion to suppress may be ineffective assistance of counsel. *Kimmelman v. Morrison*, 477 U.S. 365 (1986), but is not ineffective assistance per se. *Ibid*. Where, as here, a defendant enters guilty pleas, the defendant must enter a conditional plea pursuant to Rule 11(a)(2) of the Federal Rules of Criminal Procedure in order to preserve his motion to suppress. *See United States v. Mendez-Santana*, 645

7

F.3d 822, 828-30 (6th Cir. 2011). Under Rule 11(a)(2), "[a] defendant, with the approval of the court and consent from the government, may enter a conditional guilty plea 'reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion.'" *United States v. Martin*, 526 F.3d 926, 932 (6th Cir. 2008) (quoting Fed. R. Crim. P. 11(a)(2)). However, if the defendant fails to '"preserve all potential collateral challenges for the preservation mechanism of Rule 11(a)(2),'" the defendant will waive "all challenges to the prosecution except those going to the court's jurisdiction." *Id*. (quoting *United States v. Pickett*, 941 F.2d 411, 416 (6th Cir. 1991) (internal quotation marks omitted). After the entry of an unconditional plea, a defendant "may only attack the voluntary and intelligent character" of the plea. *United States v. Kirksey*, 118 F.3d 1113, 1115 (6th Cir. 1997) (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)). Thus, Kotsonis, to preserve his right to pursue his pre-plea suppression claims, must have expressly and affirmatively reserved that right. He did not and the only relevant inquiry is whether he voluntarily and knowingly pleaded guilty. The record in this case establishes that he did so.

A plea of guilty is valid if entered voluntarily, knowingly, and intelligently; its validity is determined under the totality of the circumstances. *Brady v. United States*, 397 U.S. 742, 749 (1970). The Constitution requires that such circumstances reflect that the defendant be informed of all the direct consequences of a guilty plea. *Id*. at 755. The record should reflect a full understanding of the direct consequences so that the plea represents a voluntary and intelligent choice among the alternatives. *See North Carolina v. Alford*, 400 U.S. 25, 31 (1970). The record in this case clearly reveals that the Court complied with Rule 11 of the Federal Rules of Criminal Procedure and properly determined that Kotsonis knowingly and voluntarily entered his guilty plea. Rule 11 ensures that a defendant pleading guilty understands his constitutional rights, that

his plea of guilty is voluntary with a full understanding of the nature of the crime charged and the consequences of his guilty plea, and that a factual basis exists for the crime to which the plea is being offered. *United States v. Goldberg*, 862 F.2d 101, 106 (6th Cir. 1988).

Kotsonis does not argue that his guilty pleas were involuntary except to state in a conclusory fashion that he only pled guilty because of the "unbearable" conditions of his pretrial detention and that counsel "offered no insight other than to plead guilty." The record in the case, in any event, conclusively shows that Kotsonis pled guilty knowingly and voluntarily. This Court scrupulously followed the requirements of Rule 11 at the change of plea hearing. The Court first inquired into petitioner's competency and Kotsonis testified that he had a tenth-grade education and could read and write without difficulty, had not been treated for any mental illness or drug addiction, had taken no drugs, medicine, pills or alcoholic beverage in the previous 24 hours, and that he suffered from no mental or physical condition which would make it difficult for him to understand the proceedings, think clearly, or make good decisions about his case. [Doc. 76, at 3-4]. He testified that he had sufficient time to discuss the case with his attorney, had told his attorney everything he knew about the case, and believed his lawyer was fully aware of all the facts upon which the charges were based. [*Id*., at 4-5]. He acknowledged he had read the indictment and understood the charges against him. [*Id*., at 5-12]. Kotsonis testified that he had discussed possible defenses with his attorney, that he had read, signed, and understood the plea agreement, and that his lawyer had explained all the terms and conditions of the plea agreement, [*Id*., at 12]. He further testified that he was satisfied with his lawyer's representation of him, [*Id*.]. He testified clearly and unequivocally that he understood that by pleading guilty he was waiving his constitutional rights to plead not guilty, to have a jury trial, not to incriminate himself, and to require the government to prove him guilty beyond a reasonable doubt, [*Id*., at 13-14].

He testified that no one had put any pressure on him to plead guilty, that no government officer or agent had promised him a lighter sentence or other form of leniency if he pled guilty, and that there had been no promises or threats of any kind to induce him to plead guilty, [*Id*., at 14-15]. Petitioner agreed to sufficient facts to establish a factual basis for the crimes, and that he was pleading guilty because he was in fact guilty, [*Id*., at 16-18]. He was advised of, and acknowledged his understanding of, the maximum terms of imprisonment that could be imposed, as well as the mandatory minimum consecutive sentence for Count Two, [*Id*., at 18-20]. Kotsonis acknowledged his understanding that he would be adjudged guilty of felonies, and the attendant loss of civil rights, and that he had read and fully understood the appellate waivers contained in his plea agreement, [*Id*., at 20-22]. He further testified that he had discussed the application of the advisory sentencing guidelines to his case, the factors that would be considered in determining his sentence, and his right to object to the PSR, [*Id*., at 22-23]. Kotsonis never showed any hesitation or lack of understanding during the hearing. In short, his guilty pleas were knowingly, intelligently, and voluntarily entered and he waived his right to file pretrial suppression motions.

Petitioner's claims that he instructed his attorney to file pretrial suppression motions relating to his confession and the search of his house are simply contradicted by his own testimony at the change of plea hearing. Kotsonis discussed possible defenses with his attorney, understood all the charges against him, understood that he was waiving his constitutional right to a jury trial and other rights related to a jury trial, that he was satisfied with his attorney's representation of him, and that he pled guilty because he was guilty. Petitioner's knowing and voluntary unconditional guilty pleas makes his non- jurisdictional claims, including any suppression claims, unreviewable. *See United States v. Martin*, 526 F.3d 926, 932 (6th Cir. 2008). ("[A] voluntary and unconditional guilty plea 'bars any subsequent non-jurisdictional attack on

the conviction.'" (quoting *United States v. Pickett*, 941 F.2d 411, 416 (6th Cir. 1991)). Petitioner has not carried his burden to show either ineffective assistance of counsel or prosecutorial misconduct as relates to his confession and the recovery of the firearms.

As for petitioner's claim that his guilty pleas were not voluntary because of the "unbearable" conditions of his pretrial detention, the Court agrees with the government that the claim has been procedurally defaulted by petitioner's failure to raise the claim on direct appeal. *See Bousley v. United States*, 523 U.S. 615, 622 (1998). Petitioner has not shown cause nor actual prejudice and he certainly does not claim actual innocence. Furthermore, petitioner's claim is nothing more than a bald conclusory assertion about his conditions of pretrial detention and he has not met his burden of alleging facts sufficient to support his claim. Not only has he not pleaded any facts in his motion or affidavit to support the claim, he never called his alleged conditions of detention to the Court's attention at either his change of plea or sentencing hearings. The claim simply lacks merit.

### C. Claims 6 and 9 – *Alleyne v. United States*

Kotsonis claims he was "indicted on a charge that provides for a five-year mandatory minimum term of imprisonment" but he was nevertheless "sentenced to a seven-year mandatory minimum" in violation of the Supreme Court's holding in *Alleyne v. United States*, [Doc. 59, at 11]. Petitioner was indicted of, and pled guilty to, a violation of 18 U.S.C. § 924(c)(1)(A)(ii) which prohibits the use or carrying of a firearm during and in relation to a crime of violence and if the firearm is "brandished" provides for a sentence of "not less than 7 years." Petitioner has admitted that he brandished the firearm during the robbery of the Video Plaza on June 13, 2012.

In *Alleyne v. United States*, -- U.S. --, 133 S. Ct. 2151 (2013), the United States Supreme Court held that the rule of *Apprendi v. New Jersey*, 530 U.S. 466 (2000) that "facts that increase

the prescribed range of penalties to which a criminal defendant is exposed" are elements of the crime which must be submitted to a jury applies with equal force to facts increasing the mandatory minimum. Petitioner's argument fails for two reasons. First, *Alleyne* was decided after Kotsonis's judgment became final and the holding is not retroactive to cases on collateral review. *In re Mazzio*, 756 F.3d 487 (6th Cir. 2014). Second, the holding in *Alleyne*, even if applied retroactively, does not provide a basis for relief for Kotsonis. Petitioner's factual admission that he brandished the firearm during the robbery are controlling and facts that increase the mandatory minimum may either be submitted to a jury *or* must be admitted by the defendant. *See United States v. Stafford*, 258 F.3d 465, 476 (6th Cir. 2001) (citing *United States v. Harper*, 246 F.3d 520, 530-31 (6th Cir. 2001) (rejecting *Apprendi*-based challenge to sentencing court's determination of drug quantity where defendant stipulated the amount). *See also Descamps v. United States*, -- U.S. --, 133 S. Ct. 2276, 2288 (2013) ("[W]hen a defendant pleads guilty to a crime, he waives his right to a jury determination of . . . that offense's elements.") Because petitioner pled guilty and admitted brandishment of the firearm, there was no Sixth Amendment violation in this case.

### D. Claim 7-Speedy Trial Act

Petitioner asserts that counsel "rendered ineffective assistance by failing to move to dismiss the indictment per the Supreme Court's holding in *Zedner v. United States*, since more than 70 days (the time within which a case must be tried under the Speedy Trial Act) elapsed after defendant-movant was arraigned." [Doc. 59, at 6]. More specifically, he argues that the Court failed to make necessary "ends of justice" findings when it granted "several continuances" and thus there was "no time subject to exclusion" and "approximately 98 days elapsed" between initial appearance and guilty plea.

12

The Speed Trial Act, 18 U.S.C. §§ 3161-3174, generally requires that a federal criminal trial began within 70 days after a defendant makes an initial appearance, § 3161(c)(1), but the Act recognizes that there are certain valid reasons for greater delay in certain criminal cases. One of those reasons is set out in § 3161(h)(8) which excludes periods of delay resulting from a continuance on the basis of "findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." If the trial does not commence within the time allowed by the Act, the defendant may move before the start of trial or guilty plea to dismiss the charges. 18 U.S.C. § 3162(a)(2).

In *Zedner v. United States*, 547 U.S. 489 (2006), the Supreme Court held that the Act requires a district court that grants an ends-of-justice continuance to make explicit findings concerning the reasons for the continuance before the period of delay is excludable. *Id*., at 506-07. A court's "passing reference" does not satisfy the requirements of the Act. *Id*., at 507. The Court here, however, did more than make a simple "passing reference" as to the reasons for the continuance, discussing in detail counsel's need for more time to prepare for trial.

Kotsonis made his initial appearance before the Court on July 5, 2012 and his trial was scheduled for September 20, 2012, [Doc. 6]. On August 16, 2012, both petitioner and Benenati moved for a continuance of the September 20 trial date, [Docs. 21, 22]. Petitioner requested the continuance "to allow for investigation to be completed" and for additional time "to review and discuss the discovery, and additional information revealed through investigation." [Doc. 21]. A hearing was held on the motion on August 22, 2012, [Doc. 28], and the Magistrate Judge granted the motion on the same day, [Dec. 31,], making specific findings that counsel, "notwithstanding the exercise of due diligence, [ ] have not had sufficient time to reasonably discuss the case, and discovery, with their clients, as a result of which they have not had a reasonable amount of time in

which to determine the need for any pretrial motions, or to adequately prepare for the trial itself." [*Id*., at 1]. The Magistrate Judge rescheduled the trial for November 29, 2012 and declared the period of delay to be "excludable" under the Speedy Trial Act. [*Id*., at 2]. Petitioner subsequently pled guilty before the scheduled trial date, [Doc. 36]. No Speedy Trial Act violation occurred in the case and counsel was not ineffective for not filing a motion to dismiss on that basis. See *Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010) (counsel not constitutionally ineffective for not pursuing meritless claims).

## IV. Conclusion

For the reasons set forth above, the Court holds that neither petitioner's prosecution in this court nor his sentencing was in violation of the constitution or laws of the United States and he is not entitled to an evidentiary hearing. His motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255, [Docs. 58, 59], are DENIED.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F. 3d 466 (6th Cir. 2001). The District Court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standard set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595 (2000). *Id.*

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." After reviewing each of Petitioner's claims, the Court finds that reasonable jurists

could not conclude that petitioner's claims are adequate to deserve further review. Because petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.

A separate judgment will enter.

ENTER:

s/J. RONNIE GREER  
UNITED STATES DISTRICT JUDGE